46293.   BLACKMON v. COASTAL SERVICE, INC.

ARGUED JUNE 4, 1971—DECIDED NOVEMBER 1, 1971—
REHEARING DENIED NOVEMBER 18, 1971—

*Arthur K. Bolton*, Attorney General, *Harold N. Hill, Jr.,* Executive Assistant Attorney General, *Richard L. Chambers, Timothy J. Sweeney*, Assistant Attorneys General, for appellant.

*William T. Gerard*, for appellee.

EBERHARDT, Judge. We come again to a "tax on tax" problem. The question presented is whether the Federal and State cigarette taxes are elements of the "cost of the property sold" within the meaning of the Sales and Use Tax Act (*Code Ann.* § 92-3403a (E)) and hence, to the consumer purchaser, a part of the sale price. This ground has been plowed before in *Undercofler v. Capital Automobile Co.,* 111 Ga. App. 709 (143 SE2d 206) and *State v. Thoni Oil Magic Benzol Gas Stations,* 121 Ga. App. 454 (174 SE2d 224), affirmed 226 Ga. 883 (178 SE2d 173). The principle of those cases is that if the imposition of taxes, such as those involved here on cigarettes, falls upon the consumer or the incident of the sale by the retailer to the consumer they are not included as part of the retail sale price for calculating the sales and use tax; if, however, the tax is imposed at a time prior to the point of retail sale or other consumer transaction, it is an element of the cost of the property sold and must be included as part of the retail sale price for purposes of calculating the sales and use tax. In determining the point at which any such tax falls, primary consideration must be given to the applicable taxing statutes, to which we now turn.

■ *The Federal Act.* 26 USCA § 5701 (b) imposes certain

taxes by weight, length, and number "on cigarettes, manufactured in or imported into the United States." Section 5703 (a) (1) provides: "The *manufacturer or importer* of tobacco products[1] . . . shall be liable for the taxes imposed thereon by § 5701." (Emphasis supplied). This language more strongly supports the conclusion that the tax liability is imposed directly upon the manufacturer and not upon the retail sale than did the language of the applicable Federal statutes in *Capital Automobile Co.* and *Thoni,* supra, where it was held that the respective Federal taxes on automobiles and gasoline were includable as part of the retail sale price. In *Capital Automobile Co.* we said: "Federal excise taxes may be classed in two general categories: Some Internal Revenue Code provisions for Federal excise taxes . . . create tax liability only as of the time of a retail sale or other dealer-consumer transaction. Other provisions for Federal excise taxes generally create tax liability *prior to the point of retail sale* or consumer transaction: See 26 USC (IRC 1954) . . . Subtitle E (alcohol and *tobacco taxes* and taxes upon firearms)." 111 Ga. App. 709, 711. (Emphasis supplied). The Supreme Court of the United States, in dealing with similar taxes under § 401 of the Revenue Act of 1926 (44 Stat. (Part 2) 9, 88), held that the federal tax on tobacco was a tax upon the manufacturer and not upon the retail sale, so that a sale to a state-operated hospital was not exempt from the tax. Liggett & Myers Tobacco Co. v. United States, 299 U. S. 383 (57 SC 239, 81 LE 294). Coastal contends, however, that the original tax liability imposed upon the manufacturer by the Federal Act under consideration here, unlike the Acts construed in *Capital Automobile Co., Thoni,* and Liggett & Myers, supra, is inchoate and ultimately dependent upon a consumer sale. In support are cited § 5704 (b) of the present Act, which provides an exemption from the cigarette tax for cigarettes removed "for consumption beyond the jurisdiction of the internal revenue laws of the United States . . ."; § 5705 (a),

---

[1]Meaning, inter alia, cigarettes, 26 USCA § 5702 (c).

which provides for a refund to the manufacturer who has paid taxes on cigarettes which are withdrawn by him from the market or which are lost, destroyed by fire, etc.; and § 5708, which provides for a similar refund for cigarettes lost, etc., because of a major disaster.

However, the issue involved in Liggett & Myers, 299 U. S. 383, supra, arose in January, 1932, after the Act of March 3, 1931 (46 Stat. 1510) became effective. That Act, similar to the sections cited by Coastal here, provided for redemption of tax stamps issued after December 31, 1931, and affixed to cigarettes "which, after removal from factory or custom-house for consumption or sale, the manufacturer or importer withdraws from the market." See Stephano Bros. v. United States, 89 FSupp. 693 (Ct. Cl.) for the statutory history. In Liggett & Myers, supra (p. 384), petitioners sought to recover the value of tax stamps affixed to tobacco sold to a state-operated hospital. Similar to the provisions under consideration here, the statute there levied a tax "upon all tobacco and snuff manufactured in or imported into the United States, and hereafter sold by the manufacturer or importer, *or removed for consumption or sale,* [the tax] to be paid by the manufacturer or importer thereof." (Emphasis supplied). Petitioners contended, inter alia, that the tax was laid upon the sale of the tobacco and amounted to an imposition upon the state; the government, on the other hand, contended that the tax was upon the manufacturer with duty of payment postponed until removal or sale. Holding that the tax was upon the manufacturer and that the effect upon the purchaser was indirect, the Supreme Court observed: "True the limit of time for making payment is when the product is sold or removed, but this is a privilege designed to mitigate the burden; it indicates no purpose to impose the tax upon either sale or removal." Id., p. 386.

We conclude, for reasons stated in *Undercofler v. Capital Automobile Co.,* 111 Ga. App. 709, supra, *State v. Thoni Oil Magic Benzol Gas Stations, Inc.,* 121 Ga. App. 454 (1), supra, and Liggett & Myers Tobacco Co. v. United States, 299

U. S. 383, supra, that the Federal tax does not fall upon the incident of a retail sale and must be included as a part of the retail sale price on which the sales tax is calculated.

■ *The State Act.* Ga. L. 1955, p. 268, before amendments to be considered later, provided in § 3 (a): "A privilege tax is hereby levied on every person selling cigars and cigarettes or possessing cigars or cigarettes for sale, said tax to be measured by and graduated in accordance with the volume of cigars or cigarettes sold or possessed for sale . . ." This section, taken alone, would indicate that there was imposed a privilege tax, not on the consumer, but on persons selling or possessing for sale, and the incident of the tax would fall upon the enjoyment of the privilege of sale or possession for sale and not upon the sale itself. Cf. *Oxford v. J. D. Jewell, Inc.*, 215 Ga. 616 (112 SE2d 601); *Novak v. Redwine*, 89 Ga. App. 755 (81 SE2d 222).

Turning to other portions of the Act, § 2 defined "distributor" to mean, inter alia, an importer or in-state manufacturer; "dealer" was defined as one other than a distributor who was engaged in the business of selling cigars or cigarettes. The general distributive process contemplated by the Act as a whole, and particularly in view of Ga. L. 1960, p. 125, redefining "distributor" and "dealer," appear to be that the goods flowed from the manufacturer to the distributor, who in turn sold to a dealer for resale to consumers. Sections 4 (a) and 9 (a) as amended by Ga. L. 1960, p. 125, provided that the tax would be paid through the use of stamps to be purchased by distributors, who were required to affix them to cigarettes sold or distributed by them, escept that no additional stamps were required to be affixed to already-stamped cigarettes for the reason, as stated in § 9 (a), that "it is the intent of the Act that the tax be paid only once." Section 3 (c) allowed distributors to add the amount of the tax to the sale price and state it separately therefrom on bills and statements, etc., but these provisions were not to affect the method of collection of the tax. Other sections prior to § 14 dealt with sundry matters such as reports, records, etc. of distributors and dealers, and up to

this point it appears clear that the tax imposed by § 3 (a), as well as other obligations imposed by other sections, fell upon the distributor or dealer for the privilege of selling or possessing for sale.

Section 14, however, provided as follows: "There is hereby imposed on every person for the privilege of using, consuming, or storing in this State cigars and cigarettes on which the tax imposed by Section 3 has not been paid, a tax measured by and graduated in accordance with the volume of cigars or cigarettes used, consumed or stored as set forth in Section 3." Sections 15-19 converted every person acquiring cigarettes subject to the § 14 tax into a "responsible taxpayer" subject to the obligations of registering, maintaining records and making reports, and liable for assessments and penalties. Section 18 (b) further provided that the sanctions and penalties set forth in §§ 19-27 should be imposed where applicable for violations of the Act by consumers. Sections 21 and 24, dealing with refunds, liens, etc., referred to "any taxpayer," "the taxpayer," and "delinquent taxpayer," without specifying whether the term "taxpayer," otherwise undefined by the Act, referred to the distributor, dealer, consumer, or all.

Georgia Laws 1964, p. 50 amended the tobacco tax Act and squarely placed the incidence of the tax on the ultimate consumer or purchaser. Section 3 (a), which formerly had levied a privilege tax on persons selling or possessing for sale, was stricken and the following new § 3 (a) inserted: "An excise tax is hereby levied on the ultimate consumer or purchaser of all cigars or cigarettes sold or consumed in this State . . ." Section 3 (e), which formerly had provided only that the method of collection of the tax was not affected by other provisions of the 1955 Act which allowed distributors to add the tax to the sale price and state it separately therefrom, was replaced by a new § 3 (e): "Distributors at the time of sales to dealers shall collect from said dealers an amount equivalent to the tax upon the ultimate consumer or purchaser of the cigars and cigarettes, which collection shall constitute the security pro-

vided for by subsection (b) of Section 4 for the collection and remission by the dealer of the tax placed upon the ultimate consumer or purchaser by this Act. The distributor may state the amount of the tax separately from the price of such cigars and cigarettes on all price display signs, sales or delivery slips, and bills and statements. The provisions of this section shall in no way affect the method of collection of such tax on cigars and cigarettes as provided by this Act. Where cigars and cigarettes are sold by a distributor to a dealer, the tax shall not be construed as falling on the dealer, but such dealer shall in turn collect the tax imposed by this Act from the ultimate consumer or purchaser of said cigars or cigarettes." An added § 4 (b), referred to above in the new § 3 (e), provided as follows: "The purchase of stamps by a distributor from the State shall not be deemed a payment of the tax imposed by this Act. The funds received by the State from the sale of stamps to distributors shall be deemed security for the respective duties of the distributor and dealer to collect the taxes imposed herein, until such time as the cigars or cigarettes, with such stamps affixed, shall be sold to the ultimate consumer or purchaser. Such security shall be retained by the State and distributor and applied as a credit against the obligation to remit said taxes." Sections 21 and 24, which previously had referred only to "taxpayer," were amended to read in terms of "distributor, dealer, or taxpayer" so as to reflect that the distributor and the dealer were not the "taxpayer," leaving the ultimate purchaser or consumer as the "taxpayer." Additionally, § 24, which formerly had provided that "The amount of any unpaid tax shall be a lien against the property of the taxpayer," was amended to read "The amount of any unpaid tax shall be a lien against the property of any distributor or dealer who shall sell cigars or cigarettes *without collecting the tax . . .*" (Emphasis supplied).

Georgia Laws 1967, p. 563, amended the Act once more. Sections 3 (a) and 3 (e) were again stricken, and the following inserted: "(a) An excise tax, in addition to all other

taxes of every kind imposed by law, is imposed upon the sale, receipt, purchase, *possession, consumption,* handling, distribution or *use* of cigars and cigarettes in this State . . . (e) The tax shall be *advanced* and paid by the distributor to the Commissioner for deposit and distribution as hereinafter provided upon the first taxable transaction within the State [defined by new § 2 (j) as "the first sale, receipt, purchase, *possession, consumption,* handling, distribution, or *use* of cigars or cigarettes within this state"], whether or not such transaction involves the ultimate purchaser or consumer. *The seller or distributor shall collect the tax from the purchaser or consumer and the purchaser or consumer shall pay the tax to the seller or distributor.* The seller or distributor shall be responsible *for the collection of the tax* and the payment of the same to the Commissioner." (Emphasis supplied). New §§ 3 (f) and 3 (g) provide as follows: "(f) The amount of taxes advanced and paid to the State aforesaid shall be added to and collected *as a part of the sales price* of the cigars or cigarettes sold or distributed, which amount shall be *stated separately from the price*[2] of the cigars or cigarettes." (Emphasis supplied). "(g) The cigar and cigarette tax imposed shall be collected only once upon the same cigarettes, cigars or little cigars." Section 4 (b), which had been added by the 1964 amendment to provide that the purchase of stamps by the distributor was not deemed a payment of the tax but that the funds received were deemed security for the duties of the distributor and dealer to collect the tax, until such time as the cigarettes, with stamps affixed, were sold to the ultimate consumer, was stricken. Left intact by the 1967 amendment was the original § 14 tax on persons using, consuming, or storing cigarettes on which the § 3 tax had not been paid, as well as the other sections which make such consumers "responsible taxpayers" subject to obligations of registering, etc., and liable for assessment, sanctions, and penalties. The 1964 amendments to §§ 21 and 24, which, by removing the dis-

---

[2]Will the real sales price please stand up?

tributor and dealer from the classification of "taxpayer," left only the ultimate purchaser or consumer as the "taxpayer," were left unchanged, as well as the § 24 provision for liens against the property of distributors and dealers who sold "without collecting the tax."

With this legislative history before us,[3] the following observations appear pertinent: the 1955 Act imposed a privilege tax on persons selling or possessing for sale (§ 3) as well as on consumers when the § 3 tax had not been paid (§ 14). Thus the incidence of the tax might fall anywhere in the distributive process, even down to the consumption or use by the ultimate consumer; and the consumer was regarded as a taxpayer if the taxes had not previously been paid (§§ 15-19, 21, 24). Obviously the legislature intended to send the taxing tentacle throughout the entire process of distribution and use to insure its payment. Under such a taxing scheme, where the incidence of the tax might fall upon the consumer even after a consumer transaction, it would be improper to hold that the Act contemplated the imposition of the tax only at a time prior to a consumer transaction.

The 1964 amendment retained the § 14 tax on the consumer and, in addition, changed the nature of the § 3 tax to an excise tax on the ultimate purchaser or consumer. In addition to the substituted § 3 (a), amended §§ 3 (e), 4 (b), 21 (a) and 24 clearly reveal that the tax was no longer considered as blanketing the entire distributive process but as falling only upon the ultimate consumer. As a method of collection distributors were to purchase stamps or otherwise advance the tax, which was to stand as security for the obligation of the distributor to collect the tax from the dealer, and for the dealer's obligation to collect the tax from the ultimate consumer.

The 1967 amendment appears to be an amalgamation of the 1955 and 1964 Acts. Section 3 (a) is now an excise tax,

---

[3]There have been other amendments which do not appear to be particularly enlightening on the question at issue.

to be collected only once, but nevertheless imposed upon each separate transaction and event in the process of distribution and consumption, which the 1955 Act had accomplished, in perhaps less explicit fashion, by imposing the § 3 tax on those selling or possessing for sale and the § 14 tax on the consumer if the § 3 tax had not been paid. Thus the 1967 amendment, by new § 3 (a), retains and strengthens the concept of the 1955 Act that taxable incidents occur all the way down the line to consumption and use by the ultimate consumer. Moreover, the § 14 tax, whereby the consumer becomes a "responsible taxpayer" subject to various obligations and responsibilities, remains intact. Unlike the 1955 Act, however, which treated both those subject to the § 3 tax and those subject to the § 14 tax as "taxpayers" without discrimination, the 1967 amendment retains the distinction between "distributor, dealer, or taxpayer" made by the 1964 amendments to §§ 21 and 24, thus indicating that under both the 1964 and 1967 Acts the taxpayer was the consumer. Moreover, the 1967 amendment, while discarding the notion that funds received from distributors were deemed security for the duty to collect the tax from the consumer, nevertheless provided in new § 3 (e) that the tax should be *advanced* by the distributor upon the first taxable transaction—thereafter, "The seller or distributor *shall collect the tax* from the purchaser or consumer and the purchaser or consumer *shall pay the tax* to the seller or distributor. The seller or distributor shall be responsible *for the collection of the tax* and the payment of the same to the Commissioner . . ." In connection with the above concept of collection by the seller or distributor from the purchaser or consumer, the 1967 amendment retains the 1964 change to § 24 in regard to liens against the property of distributors or dealers who sell "without collecting the tax."

We conclude that the tobacco tax Act as it presently stands provides for the imposition of an excise tax liability upon each separate transaction and event in the process of distribution and consumption; that the distributor is required initially to advance or pay the tax which in due

course is collected from the ultimate purchaser or consumer; and that the ultimate purchaser or consumer is the "taxpayer." Under these circumstances, and applying the rules laid down in *Undercofler v. Capital Automobile Co.,* 111 Ga. App. 709, supra, and *State v. Thoni Oil Magic Benzol Gas Stations,* 121 Ga App. 454, supra, affirmed in 226 Ga. 883 (178 SE2d 173), we hold that the State cigarette taxes are not elements of the "cost of the property sold" within the meaning of the Sales and Use Tax Act and that the amounts thereof were properly .excluded in computing the amount of sales tax due by Coastal.

*Judgments affirmed in part; reversed in part. Bell, C. J., and Hall, P. J., concur. Whitman, J., not participating.*