In the Matter of JIM CLAY TOBACCO
COMPANY, INC., Bankrupt.
No. 68782.

United States District Court,
N. D. Georgia,
Atlanta Division.

Feb. 26, 1973.

———◆———

D. W. Rolader, Atlanta, Ga., for Bankrupt.

James E. Maley, Atlanta, Ga., for petitioning creditors.

John M. Bovis, Trustee.

Oscar N. Persons, lead counsel, James E. Maley, co-counsel, Atlanta, Ga., for Trustee.

William H. Major, Atlanta, Ga., for Travelers.

## ORDER

EDENFIELD, District Judge.

This action in bankruptcy is presently before the court on the trustee's second petition for review of the Referee's order.

The claimant in the case, The Travelers Indemnity Company, issued a bond to the State of Georgia which guaranteed the payment of up to $650,000 in cigarette taxes to the State. The Jim Clay Tobacco Company, Inc., a licensed tobacco distributor, was obligated under the tax collection scheme outlined in the Georgia Cigar and Cigarette Tax Act, Ga.Laws, 1955, p. 268, as amended, to purchase from the State cigarette tax stamps, which were then affixed to the individual cigarette packets before the cigarettes were redistributed to dealers and sold. From December 31, 1969 through February 11, 1970, Jim Clay delivered to the State a series of checks in payment of the cigarette tax stamps in the aggregate amount of $620,815.67. When the company went bankrupt the State discovered that there were no funds in the bankrupt's account to cover the uncashed checks and called on The Travelers to honor its bond. This The Travelers did, after a period of negotia-tion, in the amount of $600,000. In return for the $600,000, the State of Georgia assigned to The Travelers an execution issued by the State Revenue Commissioner against Jim Clay Tobacco Company, Inc., and on the basis of that assignment The Travelers filed the presently disputed proof of claim against the bankrupt estate. It is conceded that for all purposes relevant to its claim The Travelers stands in the shoes of the State as its assignee.

In the proceedings below the Referee found, over the trustee's objections, that the claim filed by The Travelers ranked as a fourth-level priority under Section 64(a)4 of the Bankruptcy Act, which allows a preference for "taxes which became legally due and owing by the bankrupt to the United States or any State or any subdivision thereof which are not released by a discharge in bankruptcy." As stated by the Referee, the primary issue in the case "is whether or not a claim for monies due to the State by a cigarette distributor, under the Georgia Cigar and Cigarette Tax Act . . . is a 'tax' under Section 64(a)4 of the Bankruptcy Act for the purpose of establishing the priority of the claim, or whether the monies were due simply as a debt, in which case the claim would rank with all other unsecured non-priority claims."

A secondary question, also considered below, is "whether the claim by the State, if established as a priority claim, could nevertheless be equitably subordinated to various other claims."

Subsequent to the Referee's first order, entered October 12, 1971, the court was made aware of a decision by the Court of Appeals of the State of Georgia, Blackmon v. Coastal Service, Inc., 125 Ga.App. 28, 186 S.E.2d 441 (1971), aff'd. 229 Ga. 471, 192 S.E.2d 372 (decided Sept. 12, 1972, rehearing denied Sept. 25, 1972), which appeared to speak to the principal question at issue. Upon the trustee's petition for review of the Referee's initial order the court remanded the case for reconsideration of the or-

der in light of *Blackmon, supra.* It is from the Referee's second order, confirming his holding in favor of The Travelers, that the trustee's present petition for review is taken.

■ On the secondary question of whether the State's claim could be equitably subordinated to various other claims, the court agrees with the Referee's findings in his initial order that on the stipulated facts there is no "evidence of unfair or unequitable conduct which could be attributed to the State of Georgia." So saying, the court will not enter into the interesting question debated by the parties of whether, assuming arguendo unfair practices could be attributable to the State, the court may use its powers of equity to subordinate a statutory preference. That question can be left for another day.

On the primary question, the court adopts as its decision the relevant portion of the Referee's able opinion filed on October 25, 1972, as follows:

Judge Drake, Referee in Bankruptcy:

"In light of Blackmon v. Coastal Service, Inc., the Court now makes the following as its substitute Conclusions of Law:

## CONCLUSIONS OF LAW

(a) The issue which has been briefed most extensively by the parties is where the incidence of the Georgia Cigar and Cigarette Tax falls: whether upon the distributor or upon the retail consumer. However, it does not appear that this matter can be so simply stated or resolved. In the recent case of Blackmon v. Coastal Service, Inc., 125 Ga.App. 28, 186 S.E.2d 441 (1971), affirmed without opinion, although with a written dissent by one justice, [229 Ga. 471, 192 S.E.2d 372], the Court, making an extensive analysis of both the text and the history of the Georgia Cigar and Cigarette Tax, declared that:

"Section 3(a), is now an excise tax, to be collected only once, but nevertheless imposed upon each separate transaction and event in the process of distribution and consumption . . . . Thus, the 1967 amendment, by new § 3(a), retains and strengthens the concept of the 1955 Act that taxable incidents occur all the way down the line to consumption and use by the ultimate consumer." 125 Ga.App. at 36–37, 186 S.E.2d at 446.

■ Before making any further analysis of the decision in *Coastal Service*, the Court notes that it is clear that under the rule set forth in City of New York v. Feiring, 313 U.S. 283, 61 S.Ct. 1028, 85 L.Ed. 1333 (1941), whether or not a particular imposition is a "tax legally due and owing" is a federal question to be determined irrespective of state decisions construing the same, and whether or not a particular obligation is a "tax" legally due and owing "by the bankrupt" for purposes of determining priority under Section 64(a)4 is also a federal question. But, in the case of a tax imposed by a state or subdivision thereof, state decisions are conclusive as to the incidents of such tax—such as the date when it accrues, and whether or not it is collectible from one or both of two parties, as in the case of a sales tax. If a sales tax, or gasoline tax, or similar tax, is construed as collectible from the vendor of the commodity, irrespective of his ability to pass on the burden to the consumer-vendee, or whether he collects the tax at all, such an impost is a tax "legally due and owing by the bankrupt" under Section 64(a)4, where a claim therefor is made to the bankrupt estate of the vendor. See Collier on Bankruptcy, Vol. 3A, 64.405, notes 52–56.

■ The conjunction of state and federal law make the conclusion mandatory that the Georgia Cigar and Cigarette Tax is levied against the distributor as a tax. Under the clear wording of the state act, as interpreted by the Georgia Court of Appeals, there is no doubt that the distributor's liability is absolute, without regard to whether or not he is able to pass on the economic burden to his retail distributors and the

ultimate retail consumers.* If the cigarettes are destroyed in a fire before the ultimate retail sale, while in the hands of a retail distributor, or if the retail distributor becomes a bankrupt, the distributor's obligation is nevertheless fixed. *Inability to collect from his vendees clearly does not absolve the distributor of the burden to pay* although the State, in its discretion, may pursue whatever entity appears most likely to yield results. It should be noted that the question before the Court in *Blackmon,* was whether or not the separate cigarette tax was a part of the cost of the property sold within the definitions of the Georgia Sales and Use Tax Act.

While the Court of Appeals, in reaching the question of the retail consumer's obligation to pay a sales tax "on the cigarette tax", does not particularly satisfactorily explain the significance in the Georgia Cigar and Cigarette Tax Act of certain words which might indicate that the distributor is something other than absolutely liable, as the Trustee has so ably contended, we believe these parts of the statute may be readily reconciled with the decision reached by this Court and the Georgia courts. As the Court indicated, the Georgia Act has been through at least two major changes in emphasis since 1955. In 1964, there was a series of amendments which, as the Court stated, made the tax one which "was no longer considered as blanketing the entire distributive process but as falling only upon the ultimate consumer. As a method of collection distributors were to purchase stamps or otherwise advance the tax, which was to stand as security for the obligation of the distributor to collect the tax from the deal-

er, and for the dealer's obligation to collect the tax from the ultimate consumer." 125 Ga.App. at 36, 186 S.E.2d at 446.

Then in 1967, the Legislature reverted to the prior concept which "retains and strengthens the concept of the 1955 Act that taxable incidents occur all the way down the line to consumption and use by the ultimate consumer." 125 Ga.App. at 37, 186 S.E.2d at 446.

These total changes in emphasis, not to mention numerous other amendments, none of which have resulted in a complete rewriting of the Georgia statute, are the reason we still have in the text of the statute such ambiguous language as that found in Section 21(a) of the Act (Georgia Code Anno. Sec. 92–2220(a)), which describes the persons who may receive a refund as the "distributor, dealer or taxpayer." In 1955, the comparable language was "any taxpayer". In 1964, the words "distributor, dealer or . . ." were added, which was perfectly correct under the concept of the 1964 amendments. Unfortunately, in 1967, there was no change made in this paragraph in order to conform the linguistic sense of Section 21(a) with the substance of the remainder of the Act. In light of this history of textual change, the Court therefore sees no substantial independent significance in the distinction between the words "distributor" and "taxpayer".

Similarly, the Court finds no compelling legal significance in the choice of wordage used in Section 3(e) of the Act (Ga.Code Anno. Sec. 92–2202(e)). This Section states that the "tax shall be advanced and paid" by the distributor. The same language is repeated in Sec-

---

* In relevant part the Cigar and Cigarette Tax Act provides:

"An excise tax . . . is imposed upon the sale, receipt, purchase, possession, consumption, handling, distribution or use of cigars and cigarettes in this State . . ." Ga.Code Ann. § 92–2202(a):

"The tax shall be advanced and paid by the distributor to the commissioner for deposit and distribution as herein-

after provided upon the first taxable transaction within the State, whether or not such transaction involves the ultimate purchaser or consumer." Ga. Code Ann. § 92–2202(e);

"The words 'first taxable transaction' shall mean the first sale, receipt, purchase, possession, consumption, handling, distribution, or use of cigars or cigarettes within this State." Ga.Code Ann. § 92–2201(j).

tion 3(f). In view of the fact that the remainder of the sentence affirms the obligation of the distributor to pay regardless of whether the liability results from a sale by the distributor to the ultimate consumer which would give him the funds to make the payment, the Court finds the word "advanced" to simply reflect the economic facts of life, in that the distributor must pay the money before he has received any income and thus as a practical matter he is advancing funds. Certainly if any reconciliation of language is called for, the meaning adduced above is more reasonable than trying to reconcile the remainder of the statute with some concept that the dealer is not absolutely liable for the tax through some strained interpretation of the word "advanced".

The Court recognizes that the Court of Appeals was not particularly concerned with analyzing the Cigar and Cigarette tax from the standpoint of the incidence of the tax as it affected the distributor. Nevertheless, the comments of the Georgia Court of Appeals, when supported by the Court's independent analysis of the statute, led inevitably to the conclusion that the incidence of the Georgia Cigar and Cigarette Tax does fall on the distributor as well as on the retail dealer and ultimately the consumer.

(b) In light of the above, the Court finds a detailed comparison of the Georgia Cigar and Cigarette Tax Act with the Georgia Motor Fuel Tax Act as it existed in 1970 (Ga.Code Anno., Chapter 92–14) [as urged by the trustee] to be unnecessary. The Georgia Motor Fuel Tax Act at that time was replete with

wording which indicates a clear legislative intention that the incidence of taxation should fall solely upon the retail customer.[1] It need not detain us overlong to note that, among other provisions, the Motor Fuel Tax Act provided:

(i) That the fuel distributor's liability is dependent upon his "sale" or "use" of the fuel (Ga.Laws 1966, p. 61, 67);

(ii) The Motor Fuel Tax was specifically to be borne by the consumer, not "as part of the sales price", but as a "levy on the consumer" and as a tax which is assessed and added to the price of the motor fuel (Ga.Laws 1966, p. 61, 64).

The Court notes ample explanation for the emphasis given by the Legislature to the consumer obligation to pay the Motor Fuel tax in two factors:

(1) Under the Internal Revenue Code of the United States, motor fuel taxes, when paid by the individual taxpayer, are specifically authorized as a personal deduction. It does not seem far-fetched to conclude that the Legislature was anxious to insure that Georgia taxpayers would receive the benefit of this largesse.[2]

(2) In contrast to cigarettes, gasoline is a relatively difficult commodity to retail except at specified locations. In such a situation, the certainty of collecting the motor fuel tax is not substantially diminished by resting the tax solely and explicitly upon the shoulders of the retail consumer, with a corresponding obligation on the vendor to be a mere collector. Obviously, as during the period 1964–1967, collection of the cigarette

---

1. This date is significant because in 1971, the Legislature made the tax one which fell upon the distributor, perhaps to aid in collection, while retaining the tax advantages to the consumer by simultaneously adjusting the Georgia Sales and Use Tax Act. Compare Georgia Laws 1971, pp. 81, 82 with Georgia Laws 1971, p. 85.

2. Although the Court hesitates to speculate about Legislative intention in the absence of any evidence, it notes that Rev.Rul. 69–31 1969–1 CB 307 declared obsolete G.C.M. 7411, IX–1 CB 98 which required

for deductibility an express statement (in the state act) that the tax was imposed on the consumer, a provision for refund not non-highway consumption and a requirement that the retailer collect from the consumer. This Revenue Ruling was issued very early in 1969 and left without emendation Section 164(b)(5) of the Internal Revenue Code which only requires (for deductibility) that the gasoline tax be separately stated. The 1971 Georgia change would have been a logical response to the 1969 Revenue Ruling.

tax is made substantially more difficult if the only parties subject to the summary process of the tax collector are the retail customers. Cigarettes are readily portable and a substantial value may be transported in relatively small bulk. By way of illustration, the Court notes that a pack of cigarettes and a gallon of gasoline cost approximately the same; the problem of handling, storing and selling a gallon of gasoline, however, is substantially greater than a comparable transaction involving a pack of cigarettes.

Both of these factors indicate that the Legislature has been structuring two completely different kinds of a tax, with different objects in mind, and thus detailed analysis and comparison of the gasoline and cigarette taxes is not particularly helpful. Therefore, rather than compare the gas tax, as interpreted by Georgia v. Thoni Oil Magic Benzol Gas Stations, Inc., 121 Ga.App. 454, 174 S. E.2d 224, affirmed 226 Ga. 883, 178 S. E.2d 173 (1970), with the cigarette tax, and attempt to draw perhaps invalid deductions from invidious comparisons, the Court prefers to rest its decision upon Blackmon v. Coastal Service and its own analysis of the cigarette tax, based upon federal law, as set forth *supra* and *infra.*

(c) The Court finds it immaterial that the distributor is allowed to pass the economic burden of the tax on to the ultimate consumer. Under Georgia Code Section Annotated 92–2202(e), immediately after a recitation again that the tax is "paid by the distributor", the seller or distributor is authorized to in turn collect the tax from the purchaser or consumer and the purchaser or consumer is obligated to pay the tax to the seller or the distributor. Of course, the use of stamps, affixed to each pack of cigarettes, in accord with Ga.Code Anno. Sec. 92–2203, affords every party in the chain of distribution a ready method of determining the exact amount of the tax paid by the distributor, and which in turn is passed on to the ultimate retail consumer. But, of course, the ultimate economic burden of all taxes is eventually borne by the final consumer.

In N. Y. v. Feiring, *supra,* an almost identical situation existed. There, Section 2 of the New York Act specifically required the seller to charge the buyer with the amount of the tax separately stated from the sales price and to collect the tax from the consumer. Nevertheless, the United States Supreme Court found that there was an incident of taxation under the New York City Retail Sales Tax which was directly upon the seller, and therefore, the city was entitled to maintain a Section 64(a)4 priority under the Bankruptcy Act for its tax claim.

A similar conclusion was reached in the subsequent case of In Re Columbia Tobacco Company, 121 F.2d 641 (2nd Cir. 1941). This involved a New York State tax upon the "possession" of cigarettes for sale and the New York City tax upon the "sale of cigarettes at retail". Just as here, a claim was made by a surety against the estate of a bankrupt distributor; the Court held:

"... in each of these cases, the bankrupt's obligation to pay for the stamps was a tax liability and gave rise to a claim for taxes ... That the agent is referred to as a 'purchaser' who is liable for a 'debt', is immaterial; the nature of the imposition and not its label is the decisive factor ... It has 'all the characteristics of a tax' because it 'is a pecuniary burden ... for the support of government', imposed 'without' the 'consent' of the person upon whom it is laid." At pages 642–643.

With these decisions in mind, the final paragraph in Blackmon v. Coastal Service, Inc. acquires clarity and significance in this case. It states:

"We conclude that the tobacco tax act as it presently stands provides for the imposition of an excise tax liability upon each separate transaction and event in the process of distribution and consumption; that the distributor is required initially to advance or pay the tax which in due course is collect-

ed from the ultimate purchaser or consumer; and that the ultimate purchaser or consumer is the 'taxpayer.'"

"Bearing in mind that the Court of Appeals was not making a decision *per se* insofar as the distributor was concerned and in light of the discussion above, it is clear that the distributor is in fact a taxpayer, and that his obligation is to pay a tax to the State.

"(d) It being clear from the Georgia Cigar and Cigarette Tax Act, taken as a whole, that the liability of the distributor is fixed and absolute the moment he comes into the possession of cigarettes for the first time, the Court has no alternative but to find the obligation of the Bankrupt to the State, to which the Travelers now stands subrogated, to be that of a tax liability. As a tax liability, the State would be entitled to a fourth priority claim under Section 64(a)4 of the Bankruptcy Act, and the objection of the Trustee to the claim is denied."

For the foregoing reasons the Referee's order is affirmed, and the trustee's petition for review is dismissed.