No. 77,123

## IN THE MATTER OF THE TAX APPEAL OF ATCHISON CABLEVISION L.P.

(936 P.2d 721)

Opinion filed April 18, 1997.

*David P. Troup*, of Weary, Davis, Henry, Struebing & Troup, of Junction City, argued the cause and was on the brief for appellant Atchison Cablevision.

*John Michael Hale*, of Kansas Department of Revenue, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

LARSON, J.: This is a sales tax appeal. Atchison Cablevision L.P. (Cablevision) appeals a decision of the Kansas Board of Tax Appeals (BOTA) allowing the Kansas Department of Revenue (KDR) to impose sales tax upon cable television franchise fees collected from subscribers.

### Factual background

Cablevision owns and operates a cable television system in the City of Atchison (City) under the authority of a franchise agreement pursuant to City Ordinance 5440, as permitted by K.S.A. 12-2006. The ordinance requires Cablevision to pay a franchise fee of 5% of its gross receipts semi-annually for the right to use public ways for the transmission of its cable service. The applicable provision of the ordinance is Section 11, titled Franchise Payments, which reads:

"In consideration for the rights, privileges and franchise hereby granted, and as compensation to the City for the use of its public ways and places by the franchisee and in lieu of all occupation and license taxes, the Franchisee shall, on

or before the 31st day of January and the 31st day of July of each year in which this franchise is effective, pay to the City a sum equal to five percent (5%) of the gross receipts, subject to Federal Communications Commission approval, accompanied by a certified notarized statement, from the sale of community antennae and closed-circuit electronic service within the then existing corporate limits of the City for the preceding six (6) month period ending on the 31st day of December and the 30th day of June, respectively. Copyright tax, local and state sales tax, shall be an add-on to rates and shall be automatically passed through to subscriber. These costs shall be shown separately on billing to subscribers."

Cablevision is authorized by 47 U.S.C. § 542 (1994) to pass on the franchise fee charged by the City to its subscribers by adding a charge of 5% of the basic cable service cost to the bill and separately identifying the charge as the franchise fee. Cablevision excluded franchise fees when calculating the total amount subject to the sales tax on each customer bill. For example, on a typical billing statement, a customer would pay $11.95 for basic service, a 5% franchise fee of $.60, and 5.9% sales tax computed on the $11.95 basic service charge, amounting to $.71.

KDR audited Cablevision's revenues from June 1, 1990, to May 31, 1993, and assessed retailers' sales tax and penalties of $6,222 on unreported gross receipts derived from franchise fees collected from customers. KDR asserted that Cablevision should have been paying sales tax on the franchise fees collected from subscribers. This would convert the amount of sales tax due in the example above from $.71 to $.74.

The assessment was first appealed to the Director of Taxation (Director), who ruled the franchise fee payments are part of the "total cost to the consumer" under K.S.A. 1996 Supp. 79-3602(g) and constitute taxable "gross receipts" under K.S.A. 1996 Supp. 79-3602(h).

This order was appealed to BOTA and submitted on an agreed record with briefs. In a 3-2 decision, BOTA determined that franchise fees were not part of gross receipts and the failure to pay tax on these fees was reasonable.

After two BOTA members who had voted with the majority were replaced, a petition for reconsideration was granted. BOTA then issued its final order on reconsideration, a 4-1 decision, reversing

its previous order and upholding the Director's assessment of the sales tax.

Cablevision appealed. The case was transferred to our court pursuant to K.S.A. 20-3017.

*Standard of review.*

BOTA orders are subject to our review under the Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq.* We have authority to grant relief when we conclude "the agency has erroneously interpreted or applied the law." K.S.A. 77-621(c)(4). Where our decisions are based on stipulated facts, we exercise de novo review, and where the issue is one of statutory construction, it is subject to unlimited review. *Steele v. City of Wichita,* 250 Kan. 524, 527, 826 P.2d 1380 (1992). However, we also must consider the special rules applicable to review of an agency's actions. In *In re Tax Appeal of Harbour Brothers Constr. Co.,* 256 Kan. 216, 221-22, 883 P.2d 1194 (1994), we stated:

" 'The interpretation of a statute by an administrative agency charged with the responsibility of enforcing that statute is entitled to judicial deference. This deference is sometimes called the doctrine of operative construction. . . . [I]f there is a rational basis for the agency's interpretation, it should be upheld on judicial review. . . . [However,] [t]he determination of an administrative body as to questions of law is not conclusive and, while persuasive, is not binding on the courts.' *State Dept. of SRS v. Public Employee Relations Board,* 249 Kan. 163, 166, 815 P.2d 66 (1991).

"Deference to an agency's interpretation is especially appropriate when 'the agency is one of special competence and experience.' *Boatright v. Kansas Racing Comm'n,* 251 Kan. 240, 246, 834 P.2d 368 (1992). However, the final construction of a statute always rests with the courts. *In re Tax Exemption Application of City of Wichita,* 255 Kan. 838, 842, 877 P.2d 437 (1994)."

Cablevision asserts that BOTA's final order should be afforded minimal deference due to the fact that a different panel reached an opposite conclusion and the earlier order was reversed solely as a result of the change in the composition of the board. We make our required review cognizant of the above authorities and arguments.

*Arguments and authorities.*

We first set forth the statutory provisions and administrative regulations involved in this controversy. The obligation for payment of sales tax by Cablevision was set forth in K.S.A. 1996 Supp. 79-3603, which provides:

"For the privilege of engaging in the business of selling tangible personal property at retail in this state or rendering or furnishing any of the services taxable under this act, there is hereby levied and there shall be collected and paid a tax at the rate of 4.9%:

. . . .

"(k) the gross receipts from cable, community antennae and other subscriber radio and television services."

The statutory definition of gross receipts is set forth in K.S.A. 1996 Supp. 79-3602(h), which reads:

" 'Gross receipts' means the total selling price or the amount received as defined in this act, in money, credits, property or other consideration valued in money from sales at retail within this state; and embraced within the provisions of this act."

"Selling price" as set forth above is defined in K.S.A. 1996 Supp. 79-3602(g) as:

"the total cost to the consumer exclusive of discounts allowed and credited, but including freight and transportation charges from retailer to consumer."

The administrative regulations slightly expand upon but largely mirror the statutory provisions. Those applicable are as follows:
K.A.R. 92-19-71 states:

"(a) Sales tax shall be imposed on the gross receipts received from cable, community antennae, subscriber radio and television services. . . .

"(b) Sales tax shall be imposed on the total cost to the consumer without any deduction or exclusion for:

(1) The cost of the property or service sold;

(2) services used or expended;

(3) materials used;

(4) losses, overhead or any other cost of expense; or

(5) profit, regardless of how any contract, invoice or other evidence of the transaction is stated or computed, and whether separately billed or segregated on the same bill."

K.A.R. 92-19-46 relates to selling price and provides:

"(a) Selling price is the total consideration given in each transaction, whether in the form of money, rights, property, promise or anything of value, or by exchange or barter. The key element in imposing sales tax on a transaction is not based on what a transaction may be called or termed, but on the operation of the transaction. The term selling price includes the following:

"(1) The total monetary value of the consideration of all those things which in fact are, or are promised to be paid by the consumer to a seller in the consummation and complete performance of a retail sale, whether or not the seller receives any benefit from the consideration;

"(2) the total cost to the consumer without any deduction or exclusion for the cost of the property or service sold, labor or service used or expended, materials used, losses, overhead or any other costs or expenses, or profit, regardless of how any contract, invoice, or other evidence of the transaction is stated or computed, and whether separately billed or segregated on the same bill; and

"(3) all transactions in which a person secures for a consideration, the use of tangible personal property or services and includes transactions which may be termed royalties or licenses."

Cablevision contends that because tax statutes are penal in nature, those imposing a tax are to be strictly construed in favor of the taxpayer, citing *J. G. Masonry, Inc. v. Department of Revenue*, 235 Kan. 497, 680 P.2d 291 (1984), and *National Cooperative Refinery Ass'n v. Board of McPherson County Comm'rs*, 228 Kan. 595, 618 P.2d 1176 (1980). KDR argues that Cablevision is claiming an exemption from the retailers' sales tax under K.S.A. 1996 Supp. 79-3606(a), which reads: "The following shall be exempt from the tax imposed by this act: (a) All sales of motor-vehicle fuel or other articles upon which a sales or excise tax has been paid, not subject to refund, under the laws of this state." KDR contends exemption statutes are to be strictly construed against the one requesting the exemption. *Farmers Co-op. v. Kansas Bd. of Tax Appeals*, 236 Kan. 632, 635, 694 P.2d 462 (1985).

Cablevision denies that it is claiming any type of exemption, but rather asserts that the definition of gross receipts simply does not encompass the franchise fees collected from subscribers.

The issue does not appear to involve a claimed exemption. Rather, it involves whether franchise fees collected from subscribers are part of the total selling price of the cable television service and, thus, are taxable as part of the gross receipts. As such, we are

interpreting a statute imposing a tax, not one of exemption, and must follow the strict construction rules. This does not, however, permit us to disregard manifest legislative intent appearing in the plain and unambiguous language of the statute. *J.G. Masonry*, 235 Kan. at 500. Nor should a statute be read as to add what is not easily found therein or to remove what ordinary language would include. *National Cooperative Refinery*, 228 Kan. at 597.

The only additional statutes involved in this appeal are those allowing cities to grant franchises, found at K.S.A. 12-2001 *et seq.* The provision allowing the City to collect compensation under such a franchise is found at K.S.A. 12-2010, which states:

"Cities, may, by ordinance, levy a franchise fee or tax, including annual fixed charges as may be prescribed in the franchise ordinance. Such fixed charge may consist of a percentage of the gross receipts derived from the service permitted by the franchise from consumers or recipients of such service . . . . Such levies, taxes or fees including all forms of consideration to such city and including initial lump sum payments must be reasonable and shall be generally in conformance with standards, if any, established by federal communications commission regulations or other applicable laws."

47 U.S.C. § 542(b) specifically mandates that the franchise fee paid by a cable operator shall not exceed 5% of the cable operator's gross revenues. This provision also allows a cable operator to identify as a separate line item on each regular bill the amount of the total bill assessed as a franchise fee and the franchising authority to which the fee is paid. Although the state and federal laws upon which the franchise agreement is based speak of gross revenues for computation of the franchise fee, there is little basis to rely upon either for resolution of our question of whether franchise fees are part of gross receipts for sales tax purposes under the applicable Kansas law.

The initial BOTA order finding that collected franchise fees were not part of "gross receipts" relied heavily on the assertion that franchise fees are not imposed at a point prior to the retail sale, citing *Blackmon v. Coastal Service, Inc.*, 125 Ga. App. 28, 29, 186 S.E.2d 441 (1971). As such, it concluded that franchise fees were not an element of the cost of the service sold and, therefore, were not part of the taxable retail sales price. The order stated there was

no legal significance in the fact that the pass-through of sales tax is statutorily mandated, while the pass-through of the franchise fees under Cablevision's franchise is merely permitted. This first opinion appeared to believe that imposing sales tax upon the collected franchise fees would impose a tax upon a tax.

BOTA's final order rejected the conclusions in the first order and relied heavily upon the wording of the various statutes at issue. This order first cites *United States v. City of Leavenworth, Kan.*, 443 F. Supp. 274, 282 (D. Kan. 1977), to point out the fact that a franchise fee burden passed on economically to a consumer is not determinative of the incidence of the tax. This led BOTA to declare that the franchise fee assessed to the cable operator for its use of public ways and for the privilege of doing business is simply a cost of doing business passed on to the consumer. BOTA also asserted the franchise fee is a fee and not a tax, so no double taxation occurs by including the fee within the taxable base for purposes of computing the sales tax.

BOTA then turned to *In re Tax Appeal of Newton Country Club Co.*, 12 Kan. App. 2d 638, 753 P.2d 304, *rev. denied* 243 Kan. 779 (1988), to argue that because the franchise fee charges on the customers' bills are mandatory, the franchise fee becomes part of the cost to the customer. Therefore, franchise fees are taxable as part of the gross receipts just the same as are service charges added to the cost of alcoholic beverages and meals by the Newton County Club.

Cablevision relies on *United Artists Cable of Baltimore*, 10 F.C.C. Rec. 7250 (1995), and the unpublished opinion *Kansas City Cable Partners v. City of Kansas City, Kansas*, 1994 WL 583133 (D. Kan. 1994), to support its position. Those cases, however, relate more to franchise fees and the provisions of 47 U.S.C. § 542 and are not applicable authority to assist us in this case. The decisions there were based upon "gross revenues," under the Federal Communications Act § 622, while here we seek to define "gross receipts" under a completely different tax-related provision. Neither does the federal cap on the amount of franchise fees that a franchisor can charge a cable operator have any correlation to state and

local governments' ability to levy other taxes, such as property or sales taxes.

Cablevision attempts to distinguish the holding of *Newton Country Club* on the grounds that although a franchise fee is a mandatory charge included in the billings, it, unlike the Newton Country Club, receives no benefit from this charge and, therefore, should not be taxed upon it. The *Newton Country Club* decision examined various tests to determine the taxability of gratuities, including a "mandatory" test and a "benefit" test. It rejected the benefit test and, finding that the gratuities were mandatory, concluded that under the plain language of the retailers' sales tax statute, the gratuities were part of the "total cost to the consumer" and taxable as "gross receipts." 12 Kan. App. 2d at 644. This argument plays well for KDR under the facts of our case.

As the *Newton Country Club* opinion rejected the benefit analysis and as Cablevision admits the franchise fee is a mandatory part of the bill, our case is placed squarely within *Newton Country Club's* interpretation of "gross receipts." This requires inclusion of the franchise fee in that part of the gross receipts subject to the sales tax. Additionally, *Newton Country Club's* analysis of the plain meaning of the statutes at issue here appears to be sound. See 12 Kan. App. 2d at 644.

Cablevision argues that as 79-3603 does not contain authority to impose retailers' sales tax on a pass-through franchise fee, we are required to strictly construe the statute in its favor and find the statute prohibits such an imposition. Cablevision asserts the legislature could have expressly subjected franchise fees to the sales tax, but did not do so. However, nowhere in the statute is there authority to impose sales tax on mandatory gratuities tacked on to bills, yet the *Newton Country Club* court found these gratuities were taxable under the plain language of the statute.

Cablevision is hard pressed to make a plausible argument that when the franchise fee is paid by the subscriber, it does not become, as K.A.R. 92-19-46 specifically states in defining the selling price, a part of "the total cost to the consumer" pursuant to subparagraph (2) of that regulation. The wording of the regulation makes "gross receipts" include "the selling price" and

"the total cost to the consumer without any deduction or exclusion for the cost of the property or service sold, labor or service used or expended, materials used, losses, overhead or any other costs or expenses, or profit, regardless of how any contract, invoice, or other evidence of the transaction is stated or computed, and whether separately billed or segregated on the same bill."

Clearly, the regulation intended to include within gross receipts whatever the customer must pay to receive cable services. It is unnecessary to singularly designate every type of receipt that is taxable when the statute clearly denotes its inclusive character.

We are not impressed with Cablevision's argument that the simultaneous nature of the imposition of the franchise fee and sales tax is determinative of this matter. This appears to be a distinction without a difference and does not aid our construction of the statutes and regulations in any way.

Cablevision claims that BOTA's failure to mention *Blackmon v. Coastal Service, Inc.*, 125 Ga. App. 28, in its final order is a fatal flaw. *Blackmon,* however, does not support Cablevision's or the first BOTA decision's construction. Although the case does discuss the point in time in which tax liability is imposed, it relies heavily on determining the entity upon which the tax incidence falls. *Blackmon* clearly found that new amendments to the Georgia statutes removed the incidence of the tobacco tax from the seller and placed it upon the ultimate consumer. The seller there was simply a collector of the tax, in the same way retail sellers are collectors of the retailers' sales tax.

A contrary situation exists here, as the imposition of the franchise fee clearly falls upon Cablevision. While it is obviously a financial benefit for Cablevision to pass this fee on to its subscribers, it is not required to do so and would still have the obligation of making the payment itself irrespective of whether the fee is a part of its rate structure or the subject of a separate charge to its subscribers. The decision BOTA finally reached is supported by the fact the franchise agreement imposes the obligation to pay the fee on the cable operator for the privilege of utilizing City property. As such, it logically follows that the franchise fee is nothing more than a cost of a doing business and, therefore, a part of the total cost to

the consumer included within the selling price and a part of the gross receipts under 79-3606(a), upon which sales tax is collected.

Cablevision's argument that franchise fees and sales taxes are so similar that it makes no sense to conclude "gross receipts" include franchise fees but not sales tax collected from customers is not persuasive. The franchise fee and the sales tax have different purposes, and the legal incidence for each falls upon totally different entities. It makes sense that a statute imposing a retailers' sales tax upon gross receipts would not include the sales tax collected on those gross receipts within the taxable base. However, logic does not reject the idea of including within the gross receipts amounts collected in order for Cablevision to make required payments for the use of the City's property and to do business therein.

The weight of authority from other jurisdictions also contradicts Cablevision's position. Because definitions in taxation statutes vary from state to state, neither party could cite cases exactly on point from other jurisdictions. But, several other jurisdictions have passed on the issue of the taxability of franchise fees or similar types of privilege-of-doing-business taxes under "gross receipts" statutes worded similarly to ours.

In *GTE Southwest v. Tax. & Rev. Dept.*, 113 N.M. 610, 830 P.2d 162 (Ct. App. 1992), the court examined whether a tax on "gross receipts" defined as "the total amount of money or the value of other consideration received from . . . performing services in New Mexico," 113 N.M. at 618, applied to franchise fees passed on to customers by a telephone company. The court stated:

"In some circumstances a pass-through is not a gross receipt. Where the tax is imposed on the buyer and the seller merely acts as the collector of the tax, the amounts collected by the seller can be excluded from the gross receipts[.]' [Citation omitted.] That, however, is not the case here. The municipal franchise fee is imposed on GTE, not on customers of GTE. It is a cost of doing business, just as rent and wages are. . . . The line item on the customer's bill for a share of the municipal franchise fee is part of the charge to the customer for receiving telephone services, and payment of that amount by the customer is a gross receipt by GTE for provision of telephone services." 113 N. M. at 618.

This holding, although based on the legal incidence of the fee, clearly includes collected franchise fees within gross receipts for

sales tax purposes. The *GTE* case also cited other cases in support of its position and declared it was unpersuaded by the one case provided by the telephone company, as that case turned on statutory language.

The court in *South Cent. Bell Telephone Co. v. Olsen,* 669 S.W.2d 649, 650 (Tenn. 1984), decided that collected "retail sales taxes" were part of the gross receipts for the state gross receipts tax under a statute defining "gross receipts" as "total receipts before anything is deducted." The apparent confusion is this decision lies in the different terminology. This is not a case where a tax is placed upon collections of the same tax. Essentially, in *South Cent. Bell,* the "retail sales tax" is a privilege tax levied on the seller, only incidentally passed on to the consumer, which is equivalent to the franchise fee in our case. The "gross receipts tax" in *South Cent. Bell* is our equivalent of the retailers' sales tax. Therefore, the end result is the same as in *GTE.*

Much of KDR's brief addresses the issue of whether a franchise fee is a tax which qualifies for an exemption under 79-3606(a). Cablevision does not meet or address this argument, which in our view is not relevant to the issue we must determine.

We believe the wording of BOTA's final order succinctly states our holding in this matter. It found:

"Under the plain language of the statute, sales tax is to be levied upon the gross receipts from cable television services. Gross receipts is defined as the total selling price which means the total cost to the consumer. The total cost to the consumers of the Taxpayer includes the franchise fee. As such, it is a part of the gross receipts received by the Taxpayer and is subject to sales tax."

Based upon our stated standard of review and all of the authorities set forth herein, we hold BOTA reached the correct result, and we therefore affirm.