(104 P.3d 1007)
No. 92,305

J. M. BLOOM, *Appellee,* v. CITY OF OAKLEY, KANSAS, *Appellant.*

Opinion filed January 28, 2005.

*Jeffery A. Mason,* of Vignery & Mason, L.L.C., of Goodland, for appellant.

*James C. Spencer,* of Spencer & Spencer, P.A., of Wichita, for appellee.

Before, ELLIOTT, P.J., CAPLINGER, J., and WAHL, S.J.

CAPLINGER, J.: The City of Oakley, Kansas (City), appeals from the district court's decision holding that the property of J. M. Bloom, who resided outside the City, was not properly included within an improvement district created by the City pursuant to K.S.A. 12-693(b) to allocate the cost of improving a boundary line road located entirely within the City. We affirm the district court and find that because the City failed to enter into an interlocal agreement with Logan County (County) prior to assessing property

located outside City boundaries, Bloom's property was not properly included within the improvement district.

The material facts were not disputed, and this case was resolved based on cross-motions for summary judgment.

On July 1, 2002, various landowners filed a petition with the City pursuant to K.S.A. 12-6a01 *et seq.* The petition requested a specified portion of Royal Avenue be paved and that approximately 85% of the costs of the improvement be assessed to the landowners within an identified improvement district; the City would bear the remainder of the costs. The petition was signed by various landowners within the proposed improvement district. Bloom did not sign the petition.

The portion of Royal Avenue that was subject to the proposed improvement fell entirely within the corporate limits of the City. Bloom's property ran alongside a lengthy portion of Royal Avenue, but his property lay entirely outside the city limits. The city limits terminated at the side of Royal Avenue adjacent to Bloom's property.

The same date the petition was filed, the City Council passed a resolution finding it advisable to pave Royal Avenue and to assess the cost of the improvement to landowners in the improvement district and the City as provided in the petition. The resolution proposed that the improvement district include the property identified in the petition, which included real estate located both within and outside the city limits.

The paving of Royal Avenue was completed by the City before November 28, 2002. On December 2, 2002, the City passed an ordinance assessing $36,287.80 against Bloom's property for the improvements.

On December 23, 2002, Bloom filed a petition in Logan County District Court against the City seeking to enjoin the assessment against him under K.S.A. 60-907(a). Bloom asserted that the City could not create an improvement district under K.S.A. 12-6a01 *et seq.* that included property outside the corporate limits of the municipality.

After a hearing on cross-motions for summary judgment, the district court held that while 1988 amendments to the pertinent

statutes permitted the City to form improvement districts that include land both inside and outside the city limits, that power was restricted by K.S.A. 12-693(b). According to the district court, that provision "requires that the governing body of the City enter into an agreement with the Board of County Commissioners in order to initiate such improvements and . . . assessments therefor." Because the City failed to enter into an agreement with the County, the trial court found the City lacked the statutory authority to levy an assessment against Bloom's property. The City appealed.

The sole issue on appeal is whether the City has the power to create an improvement district that includes property both inside and outside the city limits under the facts of this case. The power of a municipality to create special benefit or improvement districts and assess the property in the district for improvements is completely controlled by statute; a municipality has no powers except those expressly granted and those necessary to make the express powers effective. *Madden v. City of Lenexa*, 239 Kan. 397, 400, 721 P.2d 261 (1986).

Because the interpretation of statutes involves a question of law, our review is unlimited. See *In re Tax Appeal of City of Wichita*, 277 Kan. 487, 490, 86 P.3d 513 (2004).

The statute at issue, K.S.A. 12-693(b), provides in relevant part:

"(b) If the area of a *proposed improvement district is located partly within and partly outside the city*, and the construction, reconstruction or other *improvement to roads or streets which lie upon the corporate boundary limits of the city is proposed*, the governing body of the city and the board of county commissioners of the county *may* enter into agreements whereby the city or county may initiate such improvements by the establishment of an improvement district by the city under the provisions of K.S.A. 12-6a04, and amendments thereto. Such agreement shall provide for the proportionate share of the total costs of the improvement which shall be paid by the city and by the county and the share to be paid by the levying of special assessments against the benefitting property within the improvement district." (Emphasis added.)

Before considering the application of K.S.A. 12-693(b), this court first notes that both parties agree that K.S.A. 12-693(a) is not applicable here. That section allows for improvements to be made in unincorporated areas beyond a city's corporate limits and within 3 miles thereof and for assessments to be made in "improvement

districts" either partially within or wholly outside the corporate limits. While the improvement district in this case is located partially within and partially outside the city limits, the improvements are located solely within the city limits. Because K.S.A. 12-693(a) applies only when improvements are made outside the city limits, this court agrees that section need not be considered here.

Bloom contends that K.S.A. 12-693(b) does not permit the assessment the City imposed against his property because the City had no agreement with the County; he claims such an agreement is necessary when all the improvements are within the city limits but the improvement district includes property outside the city limits. The City, however, asserts such an agreement with the County is discretionary, not mandatory.

The fundamental principal of statutory interpretation is that the intent of the legislature governs if that intent can be ascertained. The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted. When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed. *Williamson v. City of Hays*, 275 Kan. 300, 305, 64 P.3d 364 (2003). In construing statutes and determining legislative intent, various provisions in an act must be construed together, *in pari materia*, with a view of reconciling and harmonizing the provisions, if possible. Effect must be given, if possible, to every part of the act. *State ex rel. Morrison v. Oshman Sporting Goods Co. Kansas*, 275 Kan. 763, 768, 69 P.3d 1087 (2003).

The scope of municipal powers under K.S.A. 12-693(b) is less than clear. The subsection clearly pertains to (1) improvement districts that include property both inside and outside the city limits, (2) where the benefit is the improvement to city streets located on the city boundary. Those are the facts of this case. Nevertheless, the meaning of the statute is much less apparent when considering the application of the phrase: "[T]he governing body of the city and the board of county commissioners of the county *may* enter into agreements whereby" either entity may initiate such improvements under K.S.A. 12-6a04. (Emphasis added.) K.S.A. 12-693(b).

The City argues the term "may" indicates the City is permitted, but not required, to enter into an agreement with the County to create the benefit district. The City also asserts that K.S.A. 12-693(b) was added after the Supreme Court's decision in *Madden*, 239 Kan. 397, in order to statutorily overrule or alter the holding of *Madden*. The City relies on the principle of statutory construction that when the legislature changes an existing law, it is presumed that the legislature intended to change the law as it existed prior to the amendment. See *Holt v. Wesley Med. Center*, 277 Kan. 536, 543, 86 P.3d 1012 (2004).

*Madden*, on its face, held that municipalities lacked statutory authority to create improvement districts that include properties outside the city limits for improvements made entirely within the city. 239 Kan. at 402. In *Madden*, the City of Lenexa had annexed some real estate that had been recently de-annexed from the City of Olathe; due to an error, however, Lenexa's annexation efforts failed to include Madden's property. Lenexa then took the steps to create a benefit district to extend water mains into the newly annexed property; the benefit improvement district included Madden's property, which was still outside the city limits. While the improvements were being made, the City annexed Madden's property. After the work was completed, Lenexa assessed the costs against the property owners in the benefit district, including Madden. The Supreme Court discussed K.S.A. 12-6a02 and K.S.A. 12-6a04 and held those statutes did not give Lenexa the statutory authority to include property outside the city limits in a benefit district. 239 Kan. at 400. The Supreme Court also rejected Lenexa's contention that K.S.A. 12-6a09 permitted the city to expand the district in order to assess property annexed into the municipality after the initial resolutions were passed. 239 Kan. 400-02.

Two years after the *Madden* decision, K.S.A. 12-693(b) was added to the statute in 1988. Those amendments were made through Senate Bill 485. See L. 1988, ch. 270, sec. 1. While neither party cites the court to legislative history to support its arguments, the court's own research regarding the limited legislative history surrounding Senate Bill 485 contradicts the City's arguments on appeal. Where a statute is ambiguous, the court may consider the

historical background of the legislation, the circumstances prompting its passage, the purpose to be accomplished, and the ultimate effect of the constructions presented by the parties to determine its intended meaning. *Hartford Cas. Ins. Co. v. Credit Union 1 of Kansas*, 268 Kan. 121, 124-25, 992 P.2d 800 (1999).

After Senate Bill 485 was introduced, it was referred to the Senate Local Government Committee. The minutes from this committee reflect that the bill was introduced by the Sedgwick County delegation; a representative of the City of Wichita gave the committee background information describing the need for the legislation. Minutes, Sen. Local Gov't Comm., January 27, 1988. Significantly, in this discussion, the city representative noted that "current law does not allow either the City or County to assess the property owners on the county side of the road except under certain circumstances." Minutes, Sen. Local Gov't Comm., January 27, 1988, Attach. I, p. 1. The city representative advised the committee that counties were concerned about the proposed legislation, and some amendments were developed following a joint meeting. Those amendments proposed language substantially similar to the current version of K.S.A. 12-693(b). See Minutes, Sen. Local Gov't Comm., January 27, 1988, Attach. I, pp. 2-3.

After its passage in the Senate, Senate Bill 485 was introduced in the House of Representatives and referred to the House Transportation Committee. During these meetings, the City of Wichita's representative advised the committee the bill resolved problems involving boundary roads in that it "retains the current law allowing interlocal agreements, but expands it to provide a method for special assessments of appropriate properties, whether on the side of a street within the city or the other side, where appropriate *and agreed upon by the affected governmental units.*" (Emphasis added.) Minutes House Transp. Comm., March 17, 1988, Attach. I, p. 2. The representative also noted that the viability of the legislation would "depend on the ability and interest of the various local governing bodies in reaching an agreement." Minutes House Transp. Comm., March 17, 1988, Attach. I, p. 2. In its comments to the committee, the League of Kansas Municipalities also advised that the purpose of the bill was to "authorize cities, subject to

certain agreements, to use the [K.S.A. 12-6a01 *et seq.*] general improvement procedure to create a special assessment district for boundary line roads covering land both within and without the city." Minutes House Transp. Comm., March 17, 1988, Attach. 3, p. 1. The League further noted that "an agreement between the city and the county would be required prior to the initiation of a special assessment project." Minutes House Transp. Comm., March 17, 1988, Attach. 3, p. 1.

Our review of the legislative history leads us to conclude that K.S.A. 12-693(b) was added to expand the authority of municipalities to assess property owners on the county side of boundary line roads for improvements to boundary line roads located entirely within a city. However, the additional authority was made contingent on interlocal agreements between municipalities and counties or other affected entities. Further, it does not appear that Senate Bill 485 was enacted in response to *Madden,* as there was no mention of the case in any of the committee minutes or testimony. Rather, the focus of the bill was solely on boundary line roads, a matter not at issue in *Madden.*

Taking into account legislative history, we find that in order to utilize K.S.A. 12-693(b) to assess property owners outside city boundaries for improvements to boundary line roads located entirely within a city, a municipality is required to enter into an interlocal agreement with the affected county, township, or industrial district. We therefore affirm the district court's interpretation of K.S.A. 12-693(b).

Affirmed.